# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RUSSELL PEDRO HOGE**, | Case No. 6:16-cv-00718-AC |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL**, Commissioner of Social Security, | |
| Defendant. | |

Kathryn Tassarini, HARDER, WELLS, BARON & MANNING, P.C. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Lars J. Nelson, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Russell P. Hoge seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for disability

insurance benefits under Title II of the Social Security Act. United States Magistrate Judge John

V. Acosta issued Findings and Recommendation ("F&R") in this case on August 9, 2017.

ECF 23. Judge Acosta recommended that the Commissioner's decision be reversed, and that the

matter be remanded for further proceedings. For the reasons discussed below, the Court adopts

Judge Acosta's F&R in part. The decision of the Commissioner is reversed, and the matter is

remanded for further proceedings.

## STANDARD OF REVIEW

In a social security case decided in the first instance by a magistrate, review of the

magistrate's opinion entails review of the underlying social security decision. Therefore, two

decisions in this case are subject to review by this Court—the first by the Commissioner, and the

second by Judge Acosta. By statute, the two decisions are entitled to two different standards of

review.

## A.  The Commissioner's Decision

The Court must affirm the Commissioner's decision if it is free of legal error and its

findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*,

879 F.2d 498, 501 (9th Cir. 1989) ("We affirm a denial of benefits when the Secretary's decision

is supported by substantial evidence and is free from legal error). "Substantial evidence" means

"more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*,

554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039). Where the evidence is

susceptible of more than one rational interpretation, the Commissioner's conclusion must be

upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

In reviewing the Commissioner's decision, the Court "must consider the entire record as

a whole." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation marks omitted). The Court

may not affirm the Commissioner "simply by isolating a specific quantum of supporting

evidence"; nor may the Court affirm the Commissioner on a ground upon which the

Commissioner did not rely. *Id.* (quotation marks omitted); *see also Bray*, 554 F.3d at 1226. But as long as "the agency's path may reasonably be discerned," the Court must affirm the agency's decision, even though the agency may have explained it with "less than ideal clarity." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quotation marks omitted).

## B. The F&R

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). If a party files objections to a magistrate's findings and recommendations, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3). For those portions of a magistrate's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."). Nor, however, does the Act "preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate's recommendations for "clear error on the face of the record."

Judge Acosta's F&R made the following findings and recommendations:

(1) The ALJ erred in rejecting the medical opinion of Dr. Gigena ("Dr. Gigena"), Hoge's treating physician;
(2) The ALJ did not err in rejecting the medical opinion of Dr. Freed ("Dr. Freed"), an examining neuropsychologist;
(3) The ALJ did not err in rejecting Hoge's subjective symptom testimony;
(4) The ALJ erred in its evaluation of lay witness testimony by Ms. Alexa Boucher ("Boucher"); and
(5) The ALJ did not err in rejecting the lay testimony of Ms. Mary Rodriguez ("Rodriguez").

Judge Acosta recommended remand. Both Hoge (ECF 26) and Defendant (ECF 25) filed timely objections.

Hoge objects to the following elements of Judge Acosta's F&R:

(1) The finding that the ALJ provided specific and legitimate reasons for discrediting Dr. Freed's medical opinion.
(2) The finding that the ALJ provided a clear and convincing reason for rejecting Hoge's subjective symptom testimony.
(3) The failure of the F&R to adequately address Hoge's claim that his "mental limitations," specifically a somatoform disorder, should have been considered in the ALJ's analysis.

Defendant objects to the following portions of Judge Acosta's F&R:

(1) The finding that it was not reasonable for the ALJ to reject Dr. Gigena's medical opinion.
(2) The failure of the F&R to discuss whether any error in evaluating Boucher's lay testimony was harmless.
(3) The finding that the ALJ erred by failing to provide a germane reason for discrediting Boucher's lay testimony concerning Hoge's limitations.

The Court has reviewed *de novo* those portions of Judge Acosta's Findings and Recommendation to which a party has objected. The Court has reviewed for clear error the one portion of the F&R to which neither party has objected, the ALJ's determination regarding the testimony of Ms. Rodriguez. The Court has also reviewed the objections, the responses, the underlying briefing before Judge Acosta, and the relevant portions of the administrative record ("AR"). The Court concludes that (1) the ALJ erred in disregarding Hoge's subjective symptom complaints and testimony; (2) the ALJ erred in rejecting Dr. Gigena's medical opinion; (3) the ALJ did not err in rejecting Dr. Freed's medical opinion; (4) the ALJ did not err in its analysis of Rodriguez's report; (5) the ALJ erred in its analysis of Boucher's report and such error was not harmless; and (6) the ALJ did not adequately consider Hoge's alleged somatoform disorder. The case is remanded for further proceedings. Thus, the Court concurs in the results of the F&R on each of these issues except with respect to items (1) and (6).

**DISCUSSION**

**A. Hoge's Subjective Symptom Testimony**

The ALJ found that Hoge's "statements concerning the intensity, persistence and limiting effects of the symptoms of his nonsevere impairments are not entirely credible." Hoge argues that the ALJ failed to give clear and convincing reasons for rejecting Hoge's testimony.

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his or her symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting

the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7. The ALJ decided Hoge's case in 2014. There is no Ninth Circuit precedent on whether SSR 16-3p applies retroactively. The Court here does not decide that question, because

it finds that, under either standard, the ALJ did not provide sufficiently clear evidence to support its decision to reject Hoge's subjective symptom testimony.

The ALJ stated generally that "[c]laimant's statements concerning the intensity, persistence and limiting effects of the symptoms of [Hoge's] nonsevere impairments are not entirely credible for the reasons explained in this decision." The ALJ did not explicitly identify her reasons for discrediting Hoge. Hoge notes that the Court should "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Because the ALJ, throughout her decision, discussed various facts and findings relevant to either an adverse credibility finding or, under SSR 16-3p, relevant to rejecting Hoge's subjective symptom testimony, the Court addresses those reasons here. The ALJ questioned the credibility of Hoge's testimony for several reasons, which fall generally into two categories: (1) that Hoge gave inconsistent statements and exaggerated his subjective complaints; (2) that Hoge's statements conflicted with other evidence in the record.

### 1. Inconsistent or Exaggerated Complaints

The ALJ gave several examples of what she considered to be inconsistencies in Hoge's testimony. The Court finds that none of these reasons was in fact a clear and convincing reason, supported by substantial evidence in the record, to discredit Hoge's subjective symptom testimony.

First, the ALJ noted that "in [Hoge's] initial claim he listed Crohn's disease, chronic pain, attention deficit hyperactivity disorder, anxiety, nausea, and depression as medical conditions causing him to be unable to work." ECF 12-3 at 20. The ALJ added, however, that "the inclusion of Crohn's disease as a diagnosis was made by the claimant, not by any medical source." *Id.* The ALJ further noted that, among the treating physicians at Hoge's May 18, 2012

visit to the Salem Hospital emergency room, diagnoses of gastritis or exacerbation of irritable bowel syndrome were made but "Crohn's disease was doubted." *Id*. at 22. The Court finds that this is not a clear and convincing reason to reject Hoge's subjective symptom testimony. As Hoge points out in his objection to the F&R, Hoge listed Crohn's disease in his initial claim on June 5, 2012. Only a week earlier, on May 29, 2012, Dr. Gigena, Hoge's treating physician, wrote: "Ulcerative colitis v. chron's agreed" in his assessment of Hoge. This suggests that Dr. Gigena was considering both as possible diagnoses. It was sometime after this visit that Dr. Gigena officially diagnosed Hoge with ulcerative colitis. The fact that Dr. Gigena was considering both of these diagnoses as explanations for Hoge's symptoms indicates that the symptoms associated with each may be similar, and Dr. Gigena may have told Hoge that his symptoms could be explained by either condition. Hoge is not a medical expert. The fact that Hoge, who was experiencing gastrointestinal pain and discomfort, and who may have seen Crohn's disease somewhere in his medical records, listed Crohn's disease among his medical problems is not a clear and convincing reason to reject his subjective symptom testimony.

Second, the ALJ also noted that "claimant reported few hobbies" in his consultation with Dr. Robert A. Kruger, but that in his hearing he "did indicate strong involvement in playing video games." ECF 12-3 at 23. Reporting "few hobbies" it not necessarily inconsistent with having a "strong involvement in playing video games." This is not a clear and convincing reason to reject Hoge's subjective symptom testimony.

The ALJ also found inconsistency in Hoge's description of his social anxiety, antisocial characteristics, and difficulty being around others. The ALJ noted that although Hoge claimed to have these issues, he also indicated that he had a relationship with his son, whom he supervised from time to time, with the mother of his son, and with a girlfriend who he had been dating for

eight months. The Court finds that this is not the sort of contradiction that can sustain the ALJ's decision to discredit Hoge's testimony. Although Boucher stated that Hoge had some ability to help with raising his son, she also wrote that he went out infrequently because he had a fear of his pain overwhelming him and was embarrassed by his difficulties. AR 335. She wrote that Hoge was often debilitated by his pain, with some days being worse than others. *Id.* Boucher indicated that it is difficult to communicate with Hoge when he is in pain. AR 337. Further, the "ability to maintain close relationships with [one's] family members and friends is not the same as being able to work with people who are less likely to know about or understand [one's] limitations." *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001). Similarly, to state that one has "social anxiety," "antisocial characteristics," and "difficulty being around others" is not so inconsistent with admitting to, at times, taking care of one's son or interacting with intimate partners that it warrants the rejection of Hoge's subjective testimony.

Finally, the ALJ noted that "in his testimony [Hoge] reported that he does not have a current license and does not drive a vehicle because he does not feel safe enough to drive," but he reported to Dr. Kruger that "he does not drive because his license was suspended in 2010 because he failed to pay some fines." Dr. Kruger performed his evaluation of Hoge on August 27, 2012. AR 790. Hoge testified in front of the ALJ on April 30, 2014, nearly two years later. At that time, he stated: "I don't really feel safe driving with how I feel, so I've just never gotten around to renewing my driver's license. I had one, I just didn't renew it." AR 76. Hoge argues that these two statements are not mutually exclusive. The Court agrees. These two statements are not necessarily contradictory, and the Court finds that this does not constitute a clear and convincing reason to discredit Hoge's subjective symptom testimony.

## 2. Conflicts Between Hoge's Testimony and Other Evidence in the Record

The ALJ cited two ways in which she believed that Hoge's testimony conflicted with other evidence in the record. First, the ALJ found that Hoge gave statements about illicit drug use that were inconsistent with objective lab testing. Second, the ALJ concluded that Boucher's report contradicted Hoge's testimony and showed that Hoge functioned better than he alleged.

With respect to the first reason, the ALJ noted that on May 18, 2012, Hoge denied using alcohol or illicit drugs to emergency department personnel, but tested positive for oxycodone, benzodiazepine, cannabinoids, and tricyclics. Hoge's testimony, reports to medical providers, and medical records all confirm that he has been prescribed various medications for his pain, anxiety, nausea, and depression over the years. Hoge also possessed a legal, medical marijuana card. *See, e.g.*, AR 675, 703-04, 718-19, 731-32. It is reasonable that Hoge did not consider his prescription medications to be "illicit" drugs and therefore these tests results are not a clear and convincing reason to disregard Hoge's subjective symptom testimony.

With respect to the second reason, the ALJ concluded that Boucher's report of Hoge's functioning contradicted Hoge's own testimony. This conclusion seems to have rested on the ALJ's general impression that Boucher described a "functional individual, interrupted by relatively short episodes of pain and distress, not a description of an individual incapable of all work activity." AR 26. The ALJ pointed to the various pieces of Boucher's report that identified what Hoge *is* able to do, giving short shrift to the bulk of Boucher's report, which discussed what Hoge is *not* able to do. Boucher wrote that Hoge has "severe pain during various times of day [sic] causing him to be bed riden [sic] for hours at a time." AR 333. She wrote that Hoge cannot eat due to severe pain and vomiting. AR 334. When Hoge does prepare meals, the length of time it takes him to do so depends on his pain. AR 335. Hoge's ability to do chores and to shop likewise depends on his pain level, Boucher wrote. With respect to the chores that Boucher noted

Hoge helps with—light cleaning and laundry—Hoge's time spent on these tasks also depends on his pain level, and "some days are worse than others," at times making it "extremely difficult to do basic chores." Boucher explained that when Hoge is too sick, his parents help with caring for Hoge and Boucher's son.

Although Boucher wrote that Hoge spends time reading, watching television, gaming, and writing, she also noted that his ability to take part in these activities depends on his pain level, and that Hoge instead often has to spend time in bed recovering from flashes of pain, which is usually the worst in the morning. AR 337. She described his pain as debilitating. AR 334. Boucher wrote that it is sometimes hard to communicate with Hoge due to his pain, which leaves him "usually crying and in a fetal type position trying to function properly." AR 337. As she explained, when Hoge has an outbreak of pain, the only thing he "can do is lay in bed til [sic] it passes."

Overall, Boucher explained that, when Hoge is in pain, he cannot function, and must lay in bed until his pain subsides. She explained that Hoge "is simply unable to do the day to day tasks a normal person [does]." Hoge "has severe pain outbreaks that occur throughout the day with no notice causing him to do nothing but lay in the fetal position sweating and crying till it passes an hour or two later." AR 340. Considering the entirety of Boucher's report—no part of which the ALJ gave any reasons for specifically rejecting—the ALJ's conclusion that Boucher generally described a "functional" individual is not a reasonable interpretation of Boucher's testimony and was not a clear and convincing reason to disregard Hoge's own subjective symptom testimony.

In addition to this error in the ALJ's consideration of Boucher's report *generally*, there were no *specific* contradictions between Boucher's report and Hoge's testimony that constituted

clear and convincing reasons to reject Hoge's testimony. Descriptions of Hoge's specific activities and limitations by both Hoge and Boucher were consistent with one another.

Both Boucher and Hoge acknowledged that Hoge occasionally does laundry and prepares meals, when he is feeling well enough. Boucher noted that Hoge does "light cleaning and laundry"; Hoge, when asked whether he does household chores like cleaning counters or bathrooms, or doing laundry, responded "I help out with the laundry." AR 78. Hoge did not indicate any other types of cleaning that he helped with, but he was also not specifically asked. The ALJ stated that Boucher "reports that the claimant enjoys reading, watching television, writing, and gaming, gaming with various other people and social networking, all on the computer . . ." AR 25. The ALJ stated that this "contradicts the testimony of [Hoge] that he does not use a computer." *Id.* The ALJ's basis for concluding that these activities were "all on the computer" is not clear. In fact, there is nothing in Boucher's report that expressly indicates that Hoge uses a computer. Boucher checked a box "yes" in response to the question: "Does the disabled person spend the [sic] time with others? (In person, on the phone, on the computer, etc.)." AR 337. Responding "yes" to this question does not necessarily mean that the noted activities are on the computer. The ALJ may have concluded that "gaming with various others" and "social networking" are conducted on a computer, but they may also be conducted through a television gaming system or a smart phone. Boucher does not indicate that the hobbies or activities that Hoge is involved in are "all on the computer." Even if some of these activities were on the computer, the general question posed to Hoge, whether he "uses a computer," may be interpreted in various ways. As such, the ALJ has identified no specific contradictions between Hoge's testimony and Boucher's report. Information in Boucher's report did not constitute a clear and convincing reason to disregard Hoge's subjective symptom testimony.

Because the ALJ did not provide any clear and convincing reason, supported by substantial evidence, to reject Hoge's subjective symptom testimony, the ALJ erred in disregarding Hoge's testimony.

## B. Medical Evidence

### 1. Dr. Gigena

The ALJ gave "little weight" to the medical opinion of Dr. Gigena, Hoge's treating physician. "Generally, a treating physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *see* 20 C.F.R. § 404.1527(c)(2). Where "the treating physician's medical opinion is inconsistent with other substantive evidence in the record, 'treating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 C.F.R. § 404.1527.'" *Holohan*, 246 F.3d at 1202. No party has objected to Judge Acosta's finding that Dr. Gigena's opinion is inconsistent with Dr. Harvey Alpern's, and the Court finds no clear error in it and adopts that portion of the F&R. In order to "rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor," an ALJ "must "provide[] 'specific and legitimate' reasons supported by substantial evidence in the record." *Id.* The ALJ gave little weight to Dr. Gigena's opinion for two reasons: first, "[t]he majority of the report is based on the reporting of the claimant," which the ALJ found to be non-credible; and second, "the physician is treating the claimant for indefinite symptoms, and not for defined conditions."

The Ninth Circuit has held that the finding that a medical opinion is "premised on [a claimant's] own subjective complaints, which the ALJ ha[s] already properly discounted . . . constitutes a specific, legitimate reason for rejecting the opinion of a treating physician." *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *see also Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) ("[A]n opinion of disability premised to a large extent upon the claimant's own

accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted."). To assess the reasonableness of this decision by the ALJ, the Court must ask two questions: first, whether it was reasonable for the ALJ to conclude that Dr. Gigena's opinion was "premised to a large extent upon the claimant's own accounts of his symptoms and limitations," *see Andrews*, 53 F.3d at 1043, and second, whether the ALJ properly discounted Hoge's own complaints.

First, the Court finds that it was not error for the ALJ to conclude that "[t]he majority of [Dr. Gigena's] report [wa]s based on the reporting of the claimant." Hoge argues that "Dr. Gigena's conclusions are not based solely upon Plaintiff's reporting." As an initial matter, the Court notes that the question is not whether Dr. Gigena's opinion was based *solely* on Hoge's complaints, but rather whether it was based "to a large extent," *see Andrews*, 53 F.3d at 1043, or was "premised," *see Fair*, 885 F.2d at 605, on those complaints—and more specifically, whether it was reasonable for the ALJ to conclude as much, *see Burch*, 400 F.3d at 679 ("Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld.").

Hoge cites several pages in the record in support of his argument that Dr. Gigena's report was not based largely on Hoge's complaints. Hoge points out that a biopsy done in 2010 indicated "focal active colitis," but there is nothing to indicate that Dr. Gigena reviewed this report.[1] AR 576-77. Hoge notes that a colonoscopy "revealed mild ulcerative colitis," but again provides no evidence that Dr. Gigena viewed or was sent this report.[2] AR 396. Hoge cites a

_____

[1] On this report, the physician is listed as Roger J. Epstein, and the report is copied to Daniel Jones.

[2] On this report, the attending physician is listed as Roger Epstein, and the referring physician is listed as Dan Jones.

medical record which notes, under "History of Present Illness," that Hoge "just had a colonoscopy today from dr. epstein [sic], with a polyp and dx of ulcerative colitis." AR 483. Again, this medical record was created by Daniel Jones, FNP, and does not have any clear connection to Dr. Gigena.

Hoge points to only two medical records or reports of testing that were clearly sent to Dr. Gigena. Hoge notes a colonoscopy report, prepared by Roger Epstein on January 22, 2014, which was sent to Dr. Gigena. AR 832. In it, Dr. Epstein listed as an impression from the exam "Functional Colonic Motility Disorder." AR 832. Hoge also points to a cecum biopsy, performed on January 22, 2014 and reported on January 24, 2014, revealing "focal active colitis," an increase in inflammatory cells, and focal active inflammation. AR 830.

Hoge then asserts that, "[c]onsistent with this finding"—and here Hoge seems to be referring in particular to the biopsy report—"Dr. Gigena diagnosed ulcerative colitis." Hoge cites several pages from the Record in support of this statement, in which Gigena lists ulcerative colitis as one of Hoge's conditions. Only one of these references, however, occurred *after* the above testing was performed.[3] Thus, only one of these diagnoses of ulcerative colitis could have been based on the objective testing to which Hoge refers the Court.

Hoge also relies on Dr. Gigena's answers to a form in which Dr. Gigena is asked whether Hoge's "diagnosed conditions [have] been verified through testing, laboratory results, or clinical examinations." Dr. Gigena responds "yes." AR 846. This answer does not sufficiently support Hoge's argument to ignore the finding of the ALJ. A "clinical examination" may mean nothing

---

[3] Hoge points to reports by Dr. Gigena from follow-up appointments on three different dates: May 29, 2012 (AR 438); January 2, 2014 (AR 806); and January 27, 2014 (AR 801). Only the January 27th visit took place after Hoge's colonoscopy and biopsy, which were performed on January 22, 2014.

more than observing and interviewing a patient in an exam room—this would not necessarily involve anything more than recording Hoge's subjective symptoms and physical appearance.

Based on the above record, it was reasonable for the ALJ to conclude that Dr. Gigena's opinion was based largely on Hoge's subjective complaints. But because, as discussed above, the Court also finds that the ALJ did not properly discount Hoge's subjective complaints, this finding was not a specific, legitimate reason for rejecting Dr. Gigena's testimony.

The ALJ's second reason for giving little weight to Dr. Gigena's testimony was that Dr. Gigena "is treating [Hoge] for indefinite symptoms, and not for defined conditions as explained in the testimony of the medical expert." AR 23. Judge Acosta concluded that this did not constitute a specific and legitimate reason for discrediting Dr. Gigena's medical opinion. The Court agrees and adopts that portion of the F&R. Defendant has cited no support for a contrary finding. Rather, Defendant argues only that the ALJ properly discredited Hoge's testimony, and therefore properly disregarded Dr. Gigena's opinion.

Neither of the two reasons cited by the ALJ for disregarding Dr. Gigena's medical opinion constituted specific and legitimate reasons to do so, supported by substantial evidence in the record. Therefore, the ALJ erred in disregarding Dr. Gigena's medical opinion.

### 2. Dr. Freed

The ALJ gave "little weight" to the opinion of Dr. Freed, an examining neuropsychologist. Dr. Freed's report expressly criticized and contradicted the report of Dr. Kruger. Therefore, the ALJ was only required to provide "specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012.[4] The Court finds that

---

[4] Hoge objects first that Dr. Freed's medical opinion did not conflict with that of Dr. Alpern, as Judge Acosta found. Because the ALJ explicitly noted that Dr. Freed's report contradicts *Dr. Kruger's*, and because the Court agrees, it is immaterial whether Dr. Freed's and Dr. Alpern's also conflict.

the ALJ provided a specific and legitimate reason, supported by substantial evidence in the record, for rejecting Dr. Freed's opinion.

The ALJ provided several reasons for rejecting Dr. Freed's testimony. First, the ALJ noted that Hoge reported to Dr. Freed "multiple new injuries, problems, deficits, symptoms, and limitations not seen in any earlier record, and Dr. Freed accept[ed] these as valid and accurate without any corroboration." The ALJ also noted that Dr. Freed, a psychologist, "discusses medical issues well outside his area of expertise and he provides no useful limitations." Further, while Dr. Freed "refers to testing and scores, he does not provide test results beyond his own interpretations." The ALJ noted that it was "unknown how some of the diagnoses were made, such as posttraumatic stress disorder, and the report as a whole is not unbiased."

To Dr. Freed, Hoge reported the following symptoms or problems, in addition to his gastrointestinal symptoms: a history of head injuries, an undiagnosed sleep disorder, a history of a seizure and other seizure-type events, recurrent headaches, tinnitus, panic attacks, memory problems, recurrent depressive and anxious symptoms since childhood, and a history of verbal, physical, and sexual abuse in childhood, as well as a history of academic and behavioral problems. The ALJ stated that several of Hoge's "injuries, problems, deficits, symptoms, and limitations [were] not seen in any earlier record," but did not specify which issues were new.

Hoge reported to Dr. Gale Smolen that he was abused by a babysitter at the age of five, though he did not specify the nature of that abuse. AR 848. While Hoge did not report other instances of abuse, he did report to Dr. Smolen that his father was an alcoholic, and that his mother was "involved in gambling." AR 848. He reported to Dr. Smolen that he was in a bike accident in 1996, in which he lost consciousness for one hour. AR 849. Hoge reported a history of anxiety, AR 849, and stated that he had anxiety on a daily basis, AR 850. He indicated a

depressed mood, suicidal thoughts, and regular anxiety attacks. AR 850. He also told Dr. Smolen that he has trouble sleeping. AR 850-51.

Hoge argues that the only new complaints in Dr. Freed's exam are headaches, tinnitus, and a history of having had a seizure. Hoge also acknowledges that he had not previously reported memory problems. On several occasions, Hoge's memory was reported to be normal. AR 652, 688, 704. Hoge had not otherwise complained of tinnitus, and his hearing was frequently reported to be normal. AR 463, 466, 473, 480, 493, 605. On at least two occasions, Hoge specifically denied having had a seizure, though he reported otherwise to Dr. Freed. Similarly, Hoge frequently reported that he did not experience headaches. AR 418, 445, 453, 456, 460, 470, 473, 477, 480, 484, 490, 493, 797. Defendant argues that Hoge's reported "undiagnosed sleep disorder" was also new or uncorroborated by other evidence. As Defendant points out, Hoge frequently reported having no sleep disturbances. But, Hoge has also on occasion reported sleep disturbances—he at least once mentioned abdominal pain waking him (AR 473), an increase in sleepiness (AR 505, 796), and at one point insomnia—although he then reported he had a normal sleep study (AR 507). Although many of the complaints that Hoge reported to Dr. Freed had previously been reported, Hoge did report several new symptoms to Dr. Freed and whether some of the complaints were sufficiently corroborated was subject to more than one rational interpretation. Accordingly, the ALJ's conclusion that Dr. Freed accepted these without corroboration is supported by the record and is a specific and legitimate reason to reject Dr. Freed's medical opinion.

The ALJ also found that Dr. Freed discussed in his report "areas well outside his area of expertise." More weight may be given "to the medical opinion of a specialist about medical issues related to his or her specialty." 20 C.F.R. § 404.1527(c)(5). Dr. Freed is a licensed

psychologist, specializing in neuropsychology. The ALJ does not clarify what medical issues that Dr. Freed discussed fell outside his area of expertise. Presumably, the ALJ meant physical and medical problems unrelated to psychological issues. Regardless, this is not a reason to discredit the entirety of the report, but only a reason to accord less or no weight to the portion of the report on which Dr. Freed is not considered an expert. Thus, this was not a specific and legitimate reason to discredit the entirety of Dr. Freed's opinion.

The ALJ also concluded that Dr. Freed did not provide test results, other than stating his own interpretations, and that it was "unknown how some of [Dr. Freed's] diagnoses were made, such as posttraumatic stress disorder." An "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Commissioner*, 554 F.3d 1219, 1228 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Dr. Freed did provide the results of certain tests he conducted during Hoge's evaluation, and Dr. Freed provided some explanation for how his diagnoses were made. But, the ALJ's conclusion that Dr. Freed's report was generally conclusory and inadequately explained was a rational interpretation of this evidence; as such, it should be upheld as a specific and legitimate reason, supported by the record, to disregard Dr. Freed's opinion. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The ALJ provided no support for the conclusion that Dr. Freed's report was, as a whole, "not unbiased." Absent more, this is not a specific and legitimate reason for rejecting Dr. Freed's opinion. But because the ALJ provided at least one specific and legitimate reason, supported by the evidence, to accord little weight to Dr. Freed's medical opinion, the ALJ did not err in doing so.

### C. Lay Witness Testimony

#### 1. Rodriguez

No party objected to this portion of the F&R. Accordingly, the Court reviews it for clear error, and finds none. The Court adopts this portion of the F&R.

#### 2. Boucher

For the reasons discussed above in Section A.2, this Court finds that the ALJ erred in her consideration of Boucher's report. The ALJ impermissibly selectively relied on the aspects of Boucher's report that discussed the most Hoge could do while mostly ignoring the portions of Boucher's report that discussed Hoge's limitations and challenges. Although the ALJ did not give any express reasons for rejecting the other portions of Boucher's report, an ALJ effectively rejects testimony by ignoring it. *See Smolen*, 80 F.3d at 1286.

The ALJ did not adequately consider Boucher's descriptions of Hoge's limitations in the ALJ's analysis. Contrary to describing a "functional" individual, Boucher's report described a person who was frequently immobilized by pain and discomfort.

Defendant argues that any error in assessing Boucher's report was harmless. Specifically, Defendant argues that Doctors Kruger, Alpern, and Smolen contradict Boucher's report, because the doctors opined that Hoge did not have any serious limitations. Defendant argues that, to the extent that Boucher's report—properly interpreted—says otherwise, it contradicts the medical opinions of doctors and may be disregarded.[5]

---

[5] A district court may not affirm a non-disability decision based on grounds that the ALJ herself did not invoke. *See Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) ("[W]e are constrained to review the reasons the ALJ asserts.") (quotation marks omitted). The ALJ did not give, as a basis for disregarding parts of Boucher's testimony, any contradiction between Boucher's remarks and medical opinion evidence. Thus, the Court examines whether any error in considering Boucher's report was *harmless*, as Defendant argues, but does not address whether any contradiction between Boucher's report and the medical evidence was a valid reason upon which to disregard portions of Boucher's report.

Dr. Smolen indicated that Hoge was "able to remember and understand with no impairment and concentrate and attend with no impairment." AR 852. Dr. Kruger concluded that Hoge had fair "overall attention ability and capability of sustaining his attention on brief, basic, routine, repetitive tasks," and that Hoge "would be able to complete those tasks adequately, within an appropriate period of time." AR 793. Dr. Alpern testified that Hoge did not have limitations on a physical basis. AR 67. But Dr. Alpern also explained that Hoge "may equal 12.07" (the listing for somatoform disorder) because Dr. Alpern could find no "physical physiologic mechanisms for [Hoge's] pain . . . ." AR 65-66. In short, Dr. Alpern concluded that, based on Hoge's physiologic condition, there would be no limitations; but Dr. Alpern also suggested that Hoge's symptoms could be explained by a somatoform disorder, and Dr. Alpern did not opine on how that would limit Hoge. Dr. Kruger and Dr. Smolen concluded, essentially, that Hoge had no impairments in memory or concentrating on small tasks.

Boucher's report did not contradict the reports of Doctors Smolen, Kruger, and Alpern. Boucher did check a box indicating that Hoge's symptoms affected his concentration, among other things. In explaining her selection, Boucher wrote that when Hoge experiences pain outbreaks, he must lie in bed until they pass. When specifically answering questions about attention and concentration generally, she indicated that Hoge was not impaired. AR 338. She noted that Hoge is able to finish what he starts, and his attention span is fine. Boucher indicated that Hoge could help with some cleaning and laundry. AR 335. Although she checked the box for concentration impairments, she explained this choice by reference to periods when Hoge's pain was high; when asked more specifically about his ability to concentrate on tasks, she indicated that he was not impaired. This is not inconsistent with the opinions of the medical

doctors, and would not constitute a reason to disregard her report. Thus, the error in evaluating Boucher's testimony was not harmless.

**D. Somatoform Disorder and Other "Mental Impairments"**

Hoge also objects that "mental limitations should have been included at step two of the sequential analysis." Here, Hoge seems to advance two related arguments: first, that his alleged somatoform disorder should have been considered by the ALJ in addressing his credibility; and second, that his somatoform disorder should have been considered as its own severe impairment.

The Court finds it was error for the ALJ not to consider evidence of Hoge's somatoform-related disorder as a possible explanation for any inconsistencies between Hoge's reported symptoms and other evidence in the record. Somatic symptom "disorders are characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience." 20 C.F.R. § Pt. 404, Subpt. P, App. 01(6).

Part of the ALJ's reasoning for finding Hoge's subjective symptom testimony to be non-credible was that the ALJ found inconsistencies between Hoge's complaints and objective medical evidence in the record. At one point, for instance, the ALJ noted that a treating physician found Hoge to be "a little bit dramatic," a conclusion likely based on the doctor's clinical diagnosis of Hoge—*i.e.*, that there was nothing that would physiologically explain Hoge's exhibited level of pain. Several medical opinions that the ALJ credited indicated a possible somatoform disorder. The ALJ gave "significant weight . . . to most of" the opinion of Dr.Albern. Yet Dr. Alpern stated that "there is no physiologic mechanism for [Hoge's] pain, [and] it could possibly fit under a somatoform situation." AR 21. The ALJ did not credit this *portion* of the medical opinion because the ALJ found that the discussion of a somatoform

disorder was "not as credible as other qualified sources." AR 21. The ALJ also noted that

Dr. Smolen, a psychiatrist, diagnosed Hoge with undifferentiated somatoform disorder, among

other possible conditions. But, as the ALJ explained, Dr. Smolen "did not give an opinion that

the impairment either met or equaled section 12.07" (referring to the Social Security

Administration's list of specific impairments).

It is at step three in the disability analysis, however, where an ALJ determines whether an

individual "meet[s] or equal[s] one of a list of specific impairments described in the regulations."

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (internal quotations omitted). The question

at step two of the analysis, which is as far as the ALJ progressed with respect to Hoge's alleged

somatoform disorder, is whether the claimant's impairment is "medically determinable," and

whether it is "severe."

In disregarding Hoge's mental health issues, the ALJ also noted that no provider had

recommended mental health care. On August 1, 2011, however, Dr. Gigena's wrote in his plan

for Hoge: "consider mental health therapy as soon as re insurance" (presumably indicating that

Hoge did not have insurance with which to pay for therapy at the time). AR 447. The ALJ further

stated that there was no record of mental health treatment. This is directly contradicted in

numerous places in the record—Hoge repeatedly reported that he has taken medication for his

anxiety and depression at various points, *see* AR 791, 849, and his medical records have at

various times listed anxiety and depression-related medications among his current medications,

*see, e.g.*, AR 387, 389, 391, 437, 448, 450, 452, 455.

The ALJ erred in not considering whether Hoge had a somatoform disorder that could

explain any inconsistencies between his subjective symptom testimony and doctor's objective

reports. The ALJ also erred in not adequately considering whether Hoge had a separate,

medically determinable somatoform disorder at step two. To the extent that there was insufficient evidence in the record for the ALJ to determine whether Hoge suffers from a somatoform disorder that is medically determinable and severe, it was the ALJ's responsibility to develop the record on this point. *See Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2010) (explaining that ALJs have a duty to develop the record when "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence").

**E.  Remand**

Judge Acosta determined that remand for further proceedings was appropriate. The Court adopts this portion of the F&R.

## CONCLUSION

Judge Acosta's F&R is adopted in part, as set forth herein. The F&R is otherwise supplemented with this Opinion and Order. The case is REMANDED for further proceedings.

**IT IS SO ORDERED**.

DATED this 27th day of October, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge